UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

J.S. NICOL, INC.,                                    :

                    Plaintiff,            :            03 Civ. 1548 (GBD) (AJP)

             -against-                 :            **OPINION & ORDER**

PEKING HANDICRAFT, INC.,                   :

                  Defendant.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Presently before the Court is plaintiff J.S. Nicol's motion for attorneys' fees and costs pursuant to Section 22 of its February 13, 2001 License Agreement with defendant Peking Handicraft, Inc. and the Copyright Act, 28 U.S.C. § 505. (Dkt. No. 110.) In a December 2006 trial before Judge Daniels, the jury found for J.S. Nicol on all claims, and against Peking on its counterclaims, finding that: Peking breached the parties' License Agreement by failing to make the minimum guaranteed royalty payments due on or before February 13, 2003; Peking had no right to sell off inventory after termination of the License Agreement; and Peking had committed copyright infringement for the continued post-termination manufacture, sale and distribution of nine J.S. Nicol copyrighted designs. (See Dkt. No. 111: Summit Aff. ¶¶ 2, 8-9.) The jury awarded J.S. Nicol $315,000 on its breach of contract claim and $112,500 in statutory copyright infringement damages. (See Summit Aff. ¶ 8; Dkt. No. 121: O'Prey Opp. Aff. Ex. B: 12/11/06 Trial Tr. at 914, 954-55; Dkt. No. 126: Fischman Reply Aff. ¶ 11.)

The parties have consented to decision of the fee motion by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 129.)

For the reasons discussed below, J.S. Nicol's fees motion is <u>GRANTED</u> in the amount of $550,999.87 in fees and $97,036.46 in costs and expenses, for a total of $648,036.33.

## <u>BACKGROUND</u>

On January 12, 2007, J.S. Nicol filed a motion seeking $674,591.04 in attorneys' fees, litigation costs and related expenses through December 31, 2006 under § 22 of the License Agreement[1] and under the Copyright Act, 28 U.S.C. § 505.[2] (Dkt. No. 110: Notice of Motion; Summit Aff. ¶ 10; Dkt. No. 126: Fischman Reply Aff. ¶ 55 & Ex. 1.) The request includes $527,353.50[3] in fees for J.S. Nicol's attorneys, Phillips Nizer LLP, through December 31, 2006.

---

[1]      Section 22 of the License Agreement provides in full:

> **Choice of Law and Venue**. This Agreement shall be governed by and construed in accordance with the laws of Virginia. In any action to enforce the terms of this Agreement, the prevailing party shall be entitled to receive their attorney's fees, court costs, expert witness fees, investigation expenses, and other similar litigation expenses.

(Dkt. No. 111: Summit Aff. Ex. A: License Agmt. § 22, at 5.)

[2]      The Copyright Act provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

[3]      Peking contends that J.S. Nicol overstates this figure by $6,513.50. (Dkt. No. 120: Peking
(continued...)

(Summit Aff. ¶¶ 10-11 & Ex. G: Phillips Nizer Invoices.)  Phillips Nizer's billing records reflect 216.8 billable hours for partner Summit A. Summit at $585 to $656 per hour totaling $126,497.50; 867.1 hours for partner Michael Fischman at $375 to $440 per hour totaling $364,860; $2,136 in fees for five hours of work from five other attorneys averaging $427.50 per hour; and $33,860 in fees from seven paralegals whose hourly rates ranged from $130 to $175 per hour.  (Summit Aff. ¶¶ 14-18.)  J.S. Nicol's request also includes $49,160.85 in "disbursements" made through December 31, 2006 (Summit Aff. ¶¶ 10, 19), $11,439 in court reporting fees (Summit Aff. ¶ 10 & Ex. H), $27,293.90 for technical trial consultants (Summit Aff. ¶¶ 10, 21 & Ex. I), $38,301.20 for expert witness Tedd Levine (Summit Aff. ¶¶ 10, 22-24 & Ex. J), $12,343.75 in legal work from the law firm Mahon Patusky Rothblatt & Fisher (Summit Aff. ¶¶ 10, 26 & Ex. K), $479.70 in Federal Express charges (Summit Aff. ¶ 10 & Ex. L), and $8,220.14 in hotel charges (Summit Aff. ¶ 10 & Ex. M).

On February 26, 2007, Peking filed papers in opposition to J.S. Nicol's fees motion. (Peking Opp. Fee Br.; Dkt. No. 121: O'Prey Opp. Aff.)  On March 21, 2007, J.S. Nicol filed reply papers, and requested additional fees, disbursements, costs, and expenses for work done between January 1, 2007 and March 18, 2007, bringing J.S. Nicol's total request to $731,870.83.  (Dkt. No.

---

[3]     (...continued)
Opp. Fee Br. App. A n.1.)  J.S. Nicol explains that its original March 19, 2004 invoice reflects $6,513.50 in additional time charge reductions that the firm did not approve, and that the correct invoice lists attorneys' fees for this period as $30,223.50, not $23,710.00.  (See Summit Aff. Ex. G: Phillips Nizer Invoices at 41 (March 19, 2004 invoice, fees total $23,710.00); Fischman Reply Aff. ¶¶ 53-54 & Ex. 29: 3/19/04 Phillips Nizer Invoice (March 19, 2004 invoice, fees total $30,223.50).)

125: J.S. Nicol Reply Fee Br.; Fischman Reply Aff. ¶ 1, 55, 57 & Exs. 1, 27-29.)  On March 27, 2007, Peking submitted a sur-reply letter to J.S. Nicol's reply papers, primarily contesting the reasonableness of J.S. Nicol's fees request for work done between January 1 and March 18, 2007. (Dkt. No. 130: Peking Sur-Reply Letter.)

## ANALYSIS

### I.     THE LEGAL STANDARD FOR DETERMINING ATTORNEYS' FEES

Traditionally, "[i]n determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983)).  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. . . . The district court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended.' . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. at 433-34, 103 S. Ct. at 1939-40.[4/]  Particularly in awarding statutory attorneys' fees, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry.  There remain other considerations that may lead the district court to adjust the fee upward or downward." Hensley v. Eckerhart, 461 U.S. at 434, 103 S. Ct. at 1940; see also, e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n

---

[4/]     The Second Circuit requires contemporaneous time records as a prerequisite for awarding attorneys' fees. E.g., N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

v. <u>County of Albany</u>, 522 F.3d 182, 186 (2d Cir. 2008) ("[T]he lodestar method involved two steps: (1) the lodestar calculation; and (2) adjustment of the lodestar based on case-specific considerations.").

      This year, however, the Second Circuit acknowledged that the lodestar's "value as a metaphor has deteriorated to the point of unhelpfulness," and abandoned use of the term due to longstanding confusion regarding its proper application, while leaving the methodology essentially the same.[5/] <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u> v. <u>County of Albany</u>, 522 F.3d at 190. The Second Circuit held that:

> [T]he better course – and the one most consistent with attorney's fees jurisprudence – is for the district court, in exercising its considerable discretion, to bear in mind <u>all</u> of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors;[6/] it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the

---

[5/]    The Second Circuit added: "While we do not purport to require future panels of this court to abandon the term – it is too well entrenched – this panel believes that it is a term whose time has come." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n</u> v. <u>County of Albany</u>, 522 F.3d at 190 n.4.

[6/]    The twelve <u>Johnson</u> factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) fee awards in similar cases. <u>Johnson</u> v. <u>Ga. Highway Exp., Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974).

case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 190.[7/]

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."[8/] Hensley v. Eckerhart, 461 U.S. at 440, 103 S. Ct. at 1943; accord Farrar v. Hobby, 506 U.S. 103, 114, 113 S. Ct. 566, 574 (1992); Barfield v. N.Y. City Health

---

[7/]   See also, e.g., Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 2008 WL 3255130 at *15 (2d Cir. Aug. 8, 2008); Supreme Oil Co. v. Abondolo, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008) ("In the Second Circuit, fee awards are determined by the 'presumptively reasonable fee' method.") (citing Arbor Hill); Luca v. County of Nassau, No. 04-CV-4898, 2008 WL 2435569 at *7 (E.D.N.Y. June 16, 2008) ("While a panel of the Second Circuit has recently recommended abandoning the term 'lodestar' in favor of 'presumptively reasonable fee,' the methodology remains the same.") (citation to Arbor Hill omitted); Rozell v. Ross-Holst, 05 Civ. 2936, -- F. Supp. 2d --, 2008 WL 2229842 at *4 (S.D.N.Y. May 29, 2008).

[8/]   "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." Hensley v. Eckerhart, 461 U.S. at 440, 103 S. Ct. at 1943. However, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id. at 435, 103 S. Ct. at 1940; see, e.g., Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994) ("So long as the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount.") (citing Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992)), cert. denied, 506 U.S. 1053, 113 S. Ct. 978 (1993); Torres v. Barnhardt, 02 Civ. 9209, 2007 WL 1810238 at *14 n.15 (S.D.N.Y. June 25, 2007) (Peck, M.J.); see also cases cited at page 22-23 below.

& Hosps. Corp., 537 F.3d 132, 2008 WL 3255130 at *15; Kassim v. City of Schenectady, 415 F.3d 246, 253-54 (2d Cir. 2005); Pino v. Locascio, 101 F.3d 235, 237 (2d Cir. 1995).

"There is no precise rule or formula for making these determinations." Hensley v. Eckerhart, 461 U.S. at 436, 103 S. Ct. at 1941. "The district court has broad discretion in" determining if time was reasonably expended and "need not . . . scrutinize[] each action taken or the time spent on it," Aston v. Sec'y of Health & Human Servs., 808 F.2d 9, 11 (2d Cir. 1986), but the Court has a duty to discount any "[e]xorbitant, unfounded, or procedurally defective fee applications" and ensure the final award is reasonable. Comm'r, I.N.S. v. Jean, 496 U.S. 154, 163, 110 S. Ct. 2316, 2321 (1990).

Hensley, Arbor Hill and most of the cases cited above involved awards of statutory attorneys' fees. The inquiry is much simpler in contractual attorneys' fees situations, where there cannot be any enhancement of the fees actually charged the client. Moreover, particularly in determining contractual attorneys' fees, "there is a strong presumption that the lodestar figure [i.e., the hourly rate times hours expended] represents the 'reasonable' fee" and the party advocating a reduction in the amount "bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee." Grant v. Martinez, 973 F.2d at 101 (citations & internal quotations omitted).[9]

---

[9]  See also, e.g., DLJ Mortg. Capital, Inc. v. Sunset Direct Lending, LLC, 07 Civ. 1418, 2008 WL 4489786 at *9 (S.D.N.Y. Oct. 6, 2008) ("'strong presumption' that the lodestar figure was the reasonable fee . . ."); Wise v. Kelly, 05 Civ. 5442, 2008 WL 482399 at *3 (S.D.N.Y. Feb. 21, 2008) (same); Diaz v. Paragon Motors of Woodside, Inc., No. CV-03-6466, 2007 (continued...)

## II.    APPLICATION

_____Peking does not contest that J.S. Nicol deserves attorneys' fees as a prevailing party

under § 22 of the License Agreement, and does not contest J.S. Nicol's counsel's hourly rates nor

generally the hours J.S. Nicol claims it spent litigating the instant action.[10/]  (See Dkt. No. 125: J.S.

Nicol Reply Br. at 7: "Peking does not take issue with the rates of the attorneys or paralegals at

---

[9/]      (...continued)
WL 2903920 at *4-5 (E.D.N.Y. Oct. 1, 2007) ("[T]he 'party advocating such a departure [from the lodestar], however, bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee.'"); Trs. of Bricklayers & Allied Craftworkers Local 5 v. Helmer-Cronin Constr., Inc., 03 Civ. 0748, 2005 WL 3789085 at *6 (S.D.N.Y. Oct. 24, 2005) ("There is a strong presumption that the lodestar amount represents a reasonable fee. The party seeking an adjustment to the lodestar amount bears the burden of establishing that an adjustment is necessary in order to calculate a reasonable fee.") (citation omitted); Lewis v. Triborough Bridge & Tunnel Auth., 97 Civ. 0607, 2001 WL 1898318 at *3 (S.D.N.Y. Aug. 6, 2001) (same); Colbert v. Furumoto Realty, Inc., 144 F. Supp. 2d 251, 262 (S.D.N.Y. 2001) (same).

[10/]     Peking disputes J.S. Nicol's claim, first made in its reply brief, that "there is no basis for reduction of the attorney's fees awarded to J.S. Nicol for what it (Peking) contends were unsuccessful issues taken up by J.S. Nicol during the litigation" because Phillips Nizer has already reduced hours billed by approximately 20% "for the benefit of J.S. Nicol as a small business with limited resources."  (Dkt. No. 126: Fischman Reply Aff. ¶¶ 13-18; Dkt. No. 125: J.S. Nicol Reply Fee Br. at 9-10.)  Peking argues that Phillips Nizer's attempt to provide its client a discount by "deliberately understating the hours spent working on specific tasks. . . . misleads both Peking and the Court and prevents either from evaluating the reasonableness of the time spent by [J.S. Nicol's] counsel on any particular task."  (Dkt. No. 130: Peking Sur-Reply Letter at 1.)  This Court agrees with Peking and declines to credit Phillips Nizer a 20% discount without detailed records that document the difference between time worked and time billed.   Phillips Nizer's claim that its "reductions amount to $90,968.00" rests on extraordinarily thin evidence: an incomplete "analysis of billing entries for depositions from the invoices annexed to the Summit Affidavit at Exhibit H" (Fischman Reply Aff. ¶¶ 15-16), and a one page printout which purports to document differences between time billed and time worked from December 2005 to March 2007 (Fischman Reply Aff. Ex. 16).  This Court's analysis will not credit any claimed "discount" by Phillips Nizer.

Phillips Nizer, and does not claim that firm billed too much for any of the tasks undertaken.")

Peking does argue, however, that J.S. Nicol's attorneys' fee award should be reduced because its

"time records do not provide sufficient detail to determine the nature of the services rendered," and

because J.S. Nicol's "fee request is unreasonable when compared to the result obtained." (Peking

Opp. Fee Br. at 17-19.) Peking also argues that J.S. Nicol "is not entitled to recover fees for work

performed on unsuccessful claims or motions." (Dkt. No. 120: Peking Opp. Fee Br. at 11-17.)[11/]

Specifically, Peking argues that: J.S Nicol is not statutorily entitled to fees for its copyright claims

and in any event was "only marginally successful on its copyright claims" (Peking Opp. Fee Br. at

4-8); J.S. Nicol dropped claims for copyright infringement relating to its "Marilyn" and "Just Peachy"

designs "shortly before trial, [but] after extensive discovery and motion practice" (Peking Opp. Fee

Br. at 12-14); J.S. Nicol was unsuccessful on its unfair competition and tortious interference claims

(Peking Opp. Fee Br. at 14); J.S. Nicol filed and lost a wasteful summary judgment motion (Peking

Opp. Fee Br. at 14-15); J.S. Nicol secured an expert report that Judge Daniels ultimately excluded

under the Federal Rules of Evidence (Peking Opp. Fee Br. at 15-16); and J.S. Nicol incurred fees to

depose a non-party witness whose testimony Judge Daniels excluded as non-probative and

prejudicial (Peking Opp. Fee Br. at 16-17). In addition, Peking claims that "the amount of fees

[$55,688.50] sought by [J.S. Nicol] from January 1, 2007 through March 18, 2007 is unreasonable."

(Peking Sur-Reply Letter at 3.)

---

[11/] Peking argues that the Court should "adopt a conservative estimate of the total fees and costs incurred in this case – 5% – and reduce any fee award by that amount" due to claims that J.S. Nicol "did not pursue . . . at trial." (Peking Opp. Fee Br. at 12 n.13.)

Finally, Peking asks the Court to reduce or eliminate the following specific costs or fees: costs incurred as a result of J.S. Nicol's choice to litigate in the Southern District of New York (Peking Opp. Fee Br. at 20), costs associated with unnecessary courtroom technology (Peking Opp. Fee Br. at 20-21), unnecessary transcript expenses (Peking Opp. Fee Br. at 21), fees for work on J.S. Nicol's post-trial motions (Peking Opp. Fee Br. at 21-22), and $23,707.50 in Westlaw charges (Peking Opp. Fee Br. at 21).

### A. J.S. Nicol's Time Records Are Not Vague

Peking asks this Court to reduce J.S. Nicol's attorneys' fee award by 15% because of "vague" time records that "fail to describe the subject matter relating to which its attorneys performed certain tasks or the amount of time spent on each task." (Dkt. No. 120: Peking Opp. Fee Br. at 18.) Specifically, Peking criticizes J.S. Nicol for including overly general time record entries such as "Prepare Motion Papers" or "Read Memo Re Client and Docs Related Thereto." (Peking Opp. Fee Br. at 18, citing Dkt. No. 121: O'Prey Opp. Aff. Ex. DD-GG: Phillips Nizer Invoices.) J.S. Nicol responds that its "individual time entries based on contemporaneous time records . . . provide sufficient detail of the services performed to support this fee application." (Dkt. No. 126: Fischman Reply Aff. ¶ 19; Dkt. No. 125: J.S. Nicol Reply Fee Br. at 7-8.)

A fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates," but need not "record in great detail how each minute of his time was expended[, b]ut at least . . . should identify the general subject matter of his time expenditures." Hensley v. Eckerhart, 461 U.S. 424, 437 & n.12, 103 S. Ct. 1933,

1941 & n.12 (1983).[12/] "A time entry is vague if it lacks 'sufficient specificity for the Court to assess the reasonableness of the amount charged in relation to the work performed.'" Hnot v. Wills Group Holdings Ltd., 2008 WL 1166309 at *5.[13/] "Where billing records are vague, a [percentage] reduction in fees is . . . appropriate." Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 282 (E.D.N.Y. 2008).[14/]

Similarly, the practice of "block billing," i.e., using a single entry for a variety of distinct tasks, is not prohibited in this Circuit, see Rodriguez ex rel. Kelly v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999); see also, e.g., Aiello v. Town of Brookhaven, No. 94-CV-2622, 2005 WL 1397202 at *3 (E.D.N.Y. June 13, 2005); Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003), but where block billing makes "it difficult to determine whether, and/or the extent to which, the work done by . . . attorneys is duplicative or unnecessary," courts often employ across-the-board percentage cuts. Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 277 F. Supp. 2d at 326.[15/]

---

[12/]     Accord, e.g., Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558, 2008 WL 1166309 at *5 (S.D.N.Y. Apr. 7, 2008); S.E.C. v. Goren, No. CV 00-970, 2003 WL 24257501 at *6 (E.D.N.Y. Apr. 30, 2003).

[13/]     See also, e.g., Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth., 76 Civ. 2125, 2005 WL 736146 at *9 (S.D.N.Y. Mar. 31, 2005).

[14/]     See, e.g., Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 397 (S.D.N.Y. 2000); Williams v. N.Y. City Hous. Auth., 975 F. Supp. 317, 325 (S.D.N.Y. 1997).

[15/]     See also, e.g., Alexander v. Amchem Prods., Inc., 07 Civ. 6441, 2008 WL 1700157 at *8 n.9 (S.D.N.Y. Apr. 3, 2008); Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG., 04 Civ. 3600, 2005 WL 3099592 at *5
(continued...)

J.S. Nicol provided the Court with detailed, contemporaneous time records that specify the date, the attorney who performed the work, time expended, hourly rate and the specific service provided, that allow this Court to assess the reasonableness of J.S. Nicol's attorneys' fee application. (<u>See</u> Dkt. No. 111: Summit Aff Ex. G: Phillips Nizer Invoices; O'Prey Opp. Aff. Ex. BB-HH, JJ: Phillips Nizer Invoices; Fischman Reply Aff. Exs. 1, 27-29: Phillips Nizer Invoices.) By doing so, J.S. Nicol met its initial burden, and the burden shifts to Peking to show that there should be a reduction in the fees sought. (<u>See</u> cases cited at pages 7-8 above.) Peking, for the most part, does not argue that J.S. Nicol overstated the time required to perform tasks or charged inappropriate or excessive fees,[16] but maintains that the "services" entries – which describe the executed tasks – are too vague to permit a reasonable assessment of the time spent on each task. (Peking Opp. Fee Br. at 18.)

This Court finds the billing entries sufficiently specific as to the services performed. Most entries contain detailed explanations, such as "prepare for and take deposition of Jim White" or "work on exhibits for trial: ltr. to adversary" (<u>See</u> O'Prey Opp. Aff. Ex. BB: Phillips Nizer Invoices at 4, 20.) Some entries are less specific, such as "trial preparation" (<u>see</u> O'Prey Opp. Aff.

---

[15] (...continued)
(S.D.N.Y. Nov. 15, 2005); <u>Aiello</u> v. <u>Town of Brookhaven</u>, 2005 WL 1397202 at *3.

[16] Peking argues that J.S. Nicol "overstated the amount of fees incurred post-trial" because it did not include the 20% discount Phillips Nizer offered J.S. Nicol prior to that period. (Dkt. No. 130: Peking Sur-Reply Letter at 2-3; <u>see also</u> pages 8-9 above.) As discussed above, this Court will not credit J.S. Nicol for any claimed 20% discount by Phillips Nizer for work prior to January 1, 2007, and therefore will not impose such a reduction on J.S. Nicol's post-trial fee request.

Ex. BB: Phillips Nizer Invoices at 17), but even these more general entries can be properly assessed in conjunction with the date and surrounding circumstances and court filings. Although this Court is somewhat concerned with block billing-style entries where J.S. Nicol has listed multiple tasks under one heading,[17] this Court will not make an across-the-board reduction, because in general, the time entries are entirely reasonable in context and are for comparable services. See, e.g., Hnot v. Willis Group Holdings Ltd., 2008 WL 1166309 at *5-6 ("While it may be true that, read in isolation, some entries appear vague, for most the nature or purpose becomes clear from reading the time entries immediately preceding or following them. . . . Moreover, even entries that are vague when read in isolation are not particularly common in [counsel's] billing records. . . . [A]bsent evidence that plaintiffs' block-billing has obscured [any] unreasonable billing, the Court will not impose an

---

[17]    For example, on March 11, 2004, a Phillips Nizer attorney entered the following description for two hours work: "Review J.S. Nicol's memorandum of law in opposition to defendant's summary judgment for deposition transcript citations; prepare transcript exhibits; review affidavit of Scott Nicol in opposition to defendant's motion for summary judgment for deposition transcript citations; prepare transcript exhibits; prepare additional case documents, deposition exhibits and correspondences to be used as affidavit exhibits; draft work order memo for duplicating USA." (O'Prey Opp. Aff. Ex. BB: Phillips Nizer Invoices at 12.) This Court would find it very difficult, if necessary, to accurately assign a time value to a specific task within this entry, but it is not necessary to do so as all of the tasks are compensable, and the total time spent is reasonable. In the one instance that multiple tasks makes it difficult to properly assess the invoices – post-trial work – the Court has made a reduction that incorporates its concern that J.S. Nicol's invoices do not contain satisfactory detail. (See pages 31-32 below.)

across-the-board penalty simply because a law firm has engaged in a generally accepted billing practice.").[18]

**B.**     **J.S. Nicol's Attorneys' Fee Request Should Not Be Reduced Under the Copyright Law**

Peking claims that the Copyright Act (and its interpretative case law) governs J.S. Nicol's attorneys' fee claims for time spent litigating its copyright claims against Peking.[19] (Dkt. No. 120: Peking Opp. Fee Br. at 3.) Peking does not dispute that § 22 of the License Agreement awards attorneys' fees and costs to the prevailing party in any action to enforce the terms of the agreement, but argues that J.S. Nicol's "contract claim was a discrete, simple claim [about] . . . whether Peking's failure to make a guaranteed advance royalty payment to [J.S. Nicol] on February 13, 2003 constituted a breach of the parties' [License] [A]greement," while J.S. Nicol's copyright claim was

---

[18]     "[C]ourts [often] have ordered such reductions for block-billing only when there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable. . . ." Hnot v. Willis Group Holdings Ltd., 2008 WL 1166309 at *6.

[19]     J.S. Nicol alleged that Peking

> infringed copyrights in [J.S. Nicol's] licensed bedding product artwork by manufacturing, importing, distributing, selling, offering for sale, promoting and/or advertising, without J.S. Nicol's consent, [J.S. Nicol's copyrighted] bedding products . . . or by causing and or participating in the manufacturing, importing, distributing, selling, offering for sale, promoting and/or advertising of such infringing products after breach of the License Agreement and/or beyond any limited rights granted therein.

(Dkt. No. 111: Summit Aff. Ex. B: Am. Compl. ¶ 41.) The jury awarded J.S. Nicol $112,500 in statutory copyright damages. (See Dkt. No. 126: Fischman Reply Aff. ¶ 11; Summit Aff. ¶ 8.)

"more complicated, involving extensive discovery of Peking's post-termination conduct . . . ." (Peking Opp. Fee Br. at 8.) Peking maintains that the "two claims were unrelated in fact and in law," that discovery related to the copyright claim "would have been irrelevant if [J.S. Nicol] had pursued only its contract claim," and that J.S. Nicol has inappropriately failed to distinguish which fees and costs are associated with its copyright claim and which fees and costs are associated with its contract claim. (Peking Opp. Fee Br. at 3-4, 8.)

Peking asks this Court to "deny, or at a minimum reduce, the fees and costs [J.S. Nicol] seeks for prosecuting its copyright claim." (Peking Opp. Fee Br. at 5.) Specifically, Peking argues that J.S. Nicol should not recover fees or costs for its copyright claim because Peking's defense and counter-claims were not objectively unreasonable (Peking Opp. Fee Br. at 5-6), because the jury found Peking's copyright infringement to be innocent (Peking Opp. Fee Br. at 6-7), and because J.S. Nicol was "only marginally successful on its copyright claims" (Peking Opp. Fee Br. at 7-8). Peking claims that J.S. Nicol spent 66% of its counsel's time litigating the copyright claims (Peking Opp. Fee Br. at 8-10), and that any potential fee award should be reduced "by 66% to account for attorneys' fees and costs related to [J.S. Nicol's] copyright claim[s]." (Peking Opp. Fee Br. at 10.)

J.S. Nicol acknowledges that courts award attorneys' fees pursuant to the Copyright Act at their discretion and that a body of law exists governing such determinations (see Dkt. No. 125:

J.S. Nicol Reply Br. at 3-7),[20] but maintains that "Section 22 of the License Agreement covers all the claims, including copyright." (J.S. Nicol Reply Br. at 1.) J.S. Nicol claims that "[t]he issue of copyright damages in this case was always one of competing claims about the sell off rights under the parties' contract."[21] (Fischman Reply Aff. ¶ 5.)

 This Court agrees that J.S. Nicol's breach of contract claim constituted the heart of its case, that any copyright claim depended upon an interpretation of the parties' License Agreement, and that all claims were based on a common core of facts and related legal theories that make it unnecessary and unhelpful to segregate fees claim by claim. In Hensley v. Eckerhart, 461 U.S. 424,

---

[20] J.S. Nicol also argues that full attorneys' fees would be awarded pursuant to the Copyright Act should this Court determine that J.S. Nicol's right to attorneys' fees falls under the Act. (See J.S. Nicol Reply Br. at 3-7.)

[21] Section 1(a) of the License Agreement provides, in part:

> Upon termination of this Agreement, [Peking] shall be entitled to distribute any remaining inventory of Licensed Products bearing the Artwork and to honor any contractual commitments then in effect to provide Licensed Products bearing the Artwork subject to the survival provisions set forth in Section 14 below.

Section 14 of the License Agreement provides:

> **Breach.** If either party deems the other to be in breach of this Agreement, it shall notify that party in writing and allow a period of thirty days from receipt of notice within which remedy of such breach may be made if the same is remediable within thirty days, or within a reasonable time if remedy cannot physically be accomplished within thirty days. If the party in breach fails to cure a breach within such time, the non-breaching party may immediately terminate this Agreement. Sections 2, 4, 5, 6(a), 8, 9, 12 and 23 shall survive the termination of this Agreement to the extent such provisions remain applicable following termination.

(Dkt. No. 111: Summit Aff. Ex. A: License Agmt. §§ 1, 14 at 1, 4.)

103 S. Ct. 1933 (1983), the Supreme Court addressed an attorneys' fees award where plaintiff succeeded on only some claims, but where all claims were based on a common core of facts:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

> Where a plaintiff has obtained excellent results, his attorney should receive a fully compensatory fee . . . [which] should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

461 U.S. at 435, 103 S. Ct. 1933 at 1940.[22]

---

[22] Accord, e.g., Kassim v. City of Schenectady, 415 F.3d 246, 253 (2d Cir. 2005); Green v. Torres, 361 F.3d 96, 98 & n.2 (2d Cir. 2004); Tran v. Tran, 67 Fed. Appx. 40, 42-43 (2d Cir. 2003) (Time expended on unsuccessful RICO claims compensable because "RICO claims rest[ed] on a common core of fact, and offered an alternative legal ground for the remedy actually obtained under the successful FLSA claims."); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996); Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); Grant v. Martinez, 973 F.2d 96, 101 (2d Cir. 1992); Dominic v. Consol. Edison Co., 822 F.2d 1249, 1259-60 (2d Cir. 1987) (affirming lower court decision that "the factual and legal theories underlying [plaintiff's] age discrimination claim were inextricably intertwined with those underlying his retaliatory discharge claim. Consequently, a fully compensatory fee award was justified because [plaintiff] recovered the same relief on the retaliation claim that he would have on his discrimination claim."); Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A., 478 F. Supp. 2d 508, 511-12 (S.D.N.Y. 2007); DiSorbo v. City of Schenectady, 99 Civ. 1131, 2004 WL 115009 at *4 (N.D.N.Y. Jan. 9, 2004); Wilson v. Nomura Sec. Int'l Inc., 01 Civ. 9290, 2002 WL 31487905 at *1-2 (S.D.N.Y. Nov. 7, 2002), aff'd in part, rev'd in part on other grounds, 361 F.3d 86 (2d Cir. 2004); Guzman v. Bevona, 92 Civ. 1500, 1996 WL 374144 at *2-3 (S.D.N.Y. July 3, 1996).

Peking's "post-termination conduct" constituted copyright infringement because Peking breached the License Agreement; time and resources spent litigating any copyright claim therefore necessarily overlapped with time and resources spent in litigating the breach of contract claim.[23]/  My October 20, 2004 Opinion and Order denying the parties' cross-motions for summary judgment held:

> The application of paragraph 1(a) in the case of a breach depends on which party is in breach – an issue that is so hotly disputed that it is not the subject of the cross-summary judgment motions.  If Peking is in breach, the contract is terminated pursuant to paragraph 14 – an immediate termination of the contract.  (See also License Agmt. ¶ 8(b).)  If Nicol is in breach, however, Peking should be able to terminate outright pursuant to paragraph 14 (thus ending any royalty or other obligations) or utilize paragraph 1(a), with the requirement of paying actual royalties on such products sold.[2]/  The issues, inter alia, of:  (1) who breached, (2) whether Peking's post-termination sales exceeded the scope of its paragraph 1(a) sell-off rights, and (3) whether Peking's failure to pay royalties for post-termination sales should deprive it of any paragraph 1(a) rights, all remain for trial.
>
> > [2]/ For example, if Nicol intentionally breached shortly before the contract had run its normal course, it would be unfair to deprive Peking of its paragraph 1(a) sell-off rights.

J.S. Nicol, Inc. v. Peking Handicraft, Inc., 03 Civ. 1548, 2004 WL 2360025 at *4 (S.D.N.Y. Oct. 20, 2004) (Peck, M.J.).  Any possible copyright infringement always depended upon and revolved around an interpretation of the License Agreement, "the differing interpretations of which are at the heart of this lawsuit."  J.S. Nicol, Inc. v. Peking Handicraft, Inc., 2004 WL 2360025 at *1.  It is disingenuous, therefore, for Peking to label J.S. Nicol's copyright claim as distinct and separate from

---

[23]/    Additionally, this Court does not find that J.S. Nicol engaged in overly complicated or unusual discovery regarding Peking's post-termination sales.  (See, e.g., Dkt. No. 126: Fischman Reply Aff. Exs. 7-9.)

J.S. Nicol's contract claim (particularly for purposes of determining attorneys' fees) when the parties' License Agreement defined copyright infringement in the event of breach,[24] and when Peking defended their post-termination conduct by reference to rights contained within the License Agreement.[25]  (See generally Fischman Reply Aff. Ex. 41: Peking 2/20/04 SJ Br. at 17-23; Dkt. No. 44: Peking 3/12/04 SJ Opp. Br.; Dkt. No. 48: Peking 3/22/04 SJ Reply Br.; Fischman Reply Aff. ¶¶ 6-7 & Ex. 5: Peking Pre-Trial Br. at 15, 21-22.)

---

[24]    Section 8(b) of the License Agreement provides:

> This Agreement grants a license authorizing [Peking] to use and reproduce the Artwork according to the rights granted herein. [Peking] acknowledges that this license is expressly conditioned on full payment of royalties and advance payments due as set forth in this Agreement.  In the event that [Peking] fails to make such required payments, such nonpayment shall constitute a material breach of this Agreement and all rights granted to [Peking] shall automatically revert to [J.S. Nicol], subject to the notice and cure/provision set forth in Section 14 below. Accordingly, any use or reproduction of the Artwork after termination of the rights granted hereunder constitutes copyright infringement.

(Summit Aff. Ex. A: License Agmt. § 8(b), at 3, emphasis added.)

[25]    Neither party contests the basic tenet that use of J.S. Nicol's copyrighted works would constitute copyright infringement if used in violation of the License Agreement.  See Kamakazi Music Corp. v. Robbins Music Corp., 684 F.2d 228, 230 (2d Cir. 1982) ("Once the contract had expired, [defendant] was liable for infringement of [plaintiff's] copyrights."); Leutwyler v. Royal Hashemite Court of Jordan, 184 F. Supp. 2d 303, 306 (S.D.N.Y. 2001) ("[A] copyright owner may bring a claim for infringement against a licensee whose actions exceed the scope of the license. . . . The question thus reduces to an interpretation of the license that [plaintiff] concedes was granted."); Marshall v. New Kids On The Block P'ship, 780 F. Supp. 1005, 1009 (S.D.N.Y. 1991) ("Case law in this Circuit indicates that a copyright licensee can make himself a 'stranger' to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license.").

Peking claims, however, that "where . . . a party prevails on both a contract claim and a claim based on statute, courts find that the statute, not the contractual attorneys' fee provision, governs the claim for attorneys' fees relating to the statutory claim," and cites to Ulloa v. QSP, Inc., 271 Va. 72, 624 S.E.2d 43 (2006). (Peking Opp. Fee Br. at 3.) In Ulloa, plaintiff QSP prevailed at trial on breach of contract and statutory trade secret claims, and the trial court awarded attorneys' fees on both claims under a "fee-shifting provision in the parties' contract [which] clearly placed the burden upon [defendant] Ulloa to pay reasonable attorneys' fees 'incurred by QSP in any action relating to this agreement.'" 271 Va. at 81, 624 S.E.2d at 49. The Virginia Supreme Court determined that the trial court erred in awarding plaintiff QSP attorneys' fees on its trade secret claim because that claim did not "qualif[y] as 'any action relating' to the parties' contract" because a "successful claim under the [Uniform Trade Secrets] Act, including an award of attorneys' fees, is . . . not dependent upon provisions contained in a contract between the parties." Ulloa v. QSP, Inc., 271 Va. at 81-82, 624 S.E.2d at 49.

Peking's reliance on Ulloa is inapposite; J.S. Nicol's copyright claim, unlike QSP's trade secret claim, was "dependent upon provisions contained in a contract between the parties." Ulloa v. QSP, Inc., 271 Va. at 81, 624 S.E.2d at 49. The contract and copyright claims are based on a common core of facts. J.S. Nicol succeeded on its copyright claim precisely because the jury found that Peking breached the License Agreement, and not because Peking breached the Copyright Act independently of any contract breach. (See page 18 above.)

This Court, therefore, finds that the breach of contract and copyright claims should be analyzed under the same general law governing attorneys' fees, and that there is no need to separately analyze the copyright claims under copyright law. In addition, although the License Agreement is "governed by and construed in accordance with the laws of Virginia" (Summit Aff. Ex. A: License Agmt. § 22, at 5), both parties have repeatedly cited Second Circuit case law in their motion papers. Accordingly, this Court will rely on Second Circuit case law for the remainder of this opinion and order. See Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d 51, 55 (2d Cir. 1991) ("[E]ven when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law."); see also, e.g., Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999); Wesco Distrib., Inc. v. Anshelewitz, 06 Civ. 13444, 2008 WL 2775005 at *4 (S.D.N.Y. July 16, 2008); Schultz v. N. Am. Ins. Group, 34 F. Supp. 2d 866, 868 n.4 (W.D.N.Y. 1999); cf. S. N.J. Rail Group, LLC v. Lumbermens Mut. Cas. Co., 06 Civ. 4946, 2007 WL 2296506 at *6 (S.D.N.Y. Apr. 13, 2007) (Peck, M.J.) (where "parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.") (quoting Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark, NJ, 160 F.3d 124, 128 (2d Cir. 1998)).

**_____C.    Peking's Claims Regarding J.S. Nicol's Lack of Success_**

**1.    J.S. Nicol's "Marginal" Success On Copyright Claims**

Peking argues that this Court should reduce J.S. Nicol's attorneys' fees because its $427,500[26/] jury award is only "approximately 25% of the total damages sought by [J.S. Nicol] at trial of $1,655,000" (Dkt. No. 120: Peking Opp. Fee Br. at 19) and because "[a]lthough [J.S. Nicol] pursued a copyright infringement claim alleging 43 instances of copyright infringement throughout this litigation, [J.S. Nicol] was able to state a claim for copyright infringement at trial with respect to only nine of those instances" (Peking Opp. Fee Br. at 7-8).  Peking characterizes J.S. Nicol as only "marginally successful" because it did not win statutory damages on all 43 copyrighted designs, and its attorneys' fees request as unreasonable in comparison with the result obtained.  (Peking Opp. Fee Br. at 19.)  J.S. Nicol maintains that such a fee reduction would be inappropriate, "as J.S. Nicol prevailed on [copyright] liability for all 43" designs, and recovered damages on only 9 of 43 designs because "only 9 were registered in time to permit recovery of statutory damages."  (Dkt. No. 125: J.S. Nicol Reply Fee Br. at 6.)

The Second Circuit has – at least in civil rights cases – "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation."  <u>Kassim</u> v. <u>City of Schenectady</u>, 415 F.3d 246, 255 (2d Cir. 2005); <u>see,</u>

---

[26/]    The jury awarded $315,000 to J.S. Nicol in contract damages, and $112,500 out of a possible $1,350,000 in statutory copyright infringement damages.  (Dkt. No. 111: Summit Aff ¶ 8; Dkt. No. 121: O'Prey Opp. Aff. Ex. B: 12/11/06 Trial Tr. at 914, 954-55; Dkt No. 126: Fischman Reply Aff. ¶ 11.)

e.g., Quaratino v. Tiffany & Co., 166 F.3d 422, 425-26 (2d Cir. 1999) (rejecting a "billing judgment rule" that would limit the awardable fee to one rationally related to the recovery that could be expected ex ante); Lunday v. City of Albany, 42 F.3d 131, 134-35 (2d Cir. 1994) ("[W]e consistently have resisted a strict proportionality requirement in civil rights cases."); Cowan v. Prudential Ins. Co., 935 F.2d 522, 524-27 (2d Cir. 1991) (rejecting "a reduction of the reasonable 'lodestar' fee simply because the damage award was low" in civil rights cases).[27]

      The instant action differs, admittedly, from actions arising under federal statutes that provide attorneys' fees in order to encourage litigation where the expected monetary recovery may be too small to attract effective legal representation. Nonetheless, a proportionality reduction is inappropriate in this case, because although J.S. Nicol did not win the full amount of statutory copyright damages, it successfully defeated Peking's $6.75 million counterclaims for breach of contract (Summit Aff. ¶¶ 6-7 & Ex. E: Peking Pre-Trial Br. at 7-8), proved that Peking breached the License Agreement and engaged in copyright infringement, and was awarded almost half a million

---

[27]     See also City of Riverside v. Rivera, 477 U.S. 561, 578, 106 S. Ct. 2686, 2696 (1986) (making clear that there is no per se "proportionality" rule between the damages award to a successful plaintiff and the amount of statutory attorneys' fees available). Courts in this circuit have rejected the proportionality test in other statutory fee contexts as well. See, e.g., Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 211 (E.D.N.Y. 2007) (rejecting downward adjustment of lodestar amount in light of the damages award in FLSA case); Baruch v. Healthcare Receivable Mgmt., Inc., No. 05-CV-5392, 2007 WL 3232090 at *6 (E.D.N.Y. Oct. 30, 2007) (rejecting proportionality reduction in FDCPA cases); Diaz v. Paragon Motors of Woodside, Inc., No. CV-03-6466, 2007 WL 2903920 at *7 (E.D.N.Y. Oct. 1, 2007) (rejecting proportionality reduction in TILA cases); Trs. of Bricklayers & Allied Craftworkers Local 5 v. Helmer-Cronin Const., Inc., 03 Civ. 0748, 2005 WL 3789085 at *6-7 (S.D.N.Y. Oct. 24, 2005) (rejecting proportionality reduction in ERISA cases).

dollars in damages. (See O'Prey Opp. Aff. Ex. B: 12/11/06 Trial Tr. at 954-55.) Given that as a general matter J.S. Nicol had no incentive to rack up excessive legal bills and costs in a case where only the prevailing party was entitled to such fees (see Summit Aff. Ex. A: License Agreement § 22) and where there was no guarantee J.S. Nicol would prevail, the Court in its discretion will not reduce the award of attorneys' fees based upon J.S. Nicol's inability to win a higher statutory damages award where it succeeded, both offensively and defensively, on all questions of liability and won a significant damage award.

## 2. The Dropped "Marilyn" & "Just Peachy" Copyright Claims

Peking asks the Court to reduce J.S. Nicol's attorneys' fees for time spent on discovery and motion practice relating to the "Just Peachy" and "Marilyn" designs, designs for which J.S. Nicol "dropped" its copyright infringement claim shortly before trial. (Dkt. No. 120: Peking Opp. Fee Br. at 12-14; see also Dkt. No. 111: Summit Aff. Ex. B: Am. Compl. ¶ 40.) J.S. Nicol "dropped" claims as to both those designs during oral argument on Peking's motion in limine – which J.S. Nicol originally opposed[28] – seeking exclusion of all evidence relating to the "Marilyn" and "Just Peachy" designs. (Peking Opp. Fee Br. at 12-14; see also Dkt. No. 121: O'Prey Opp. Aff. Ex. J: Peking Omnibus Mot. In Limine Br. at 3-6, 16-17.) Judge Daniels excluded all "Marilyn" evidence after

---

[28] J.S. Nicol opposed Peking's in limine motion to exclude evidence of the "Marilyn" and "Just Peachy" designs. (See Dkt. No. 126: Fischman Reply Aff. Ex. 19: J.S. Nicol Omnibus Mot. In Limine Opp. Br. at 18-19.)

J.S. Nicol "indicated that it was not pursuing [the 'Marilyn' claim] for the first time,"[29] and excluded all "Just Peachy" evidence as overly prejudicial because J.S. Nicol intended to prove Peking's "willingness to violate both the contract and the [copyright] law," and not outright copyright infringement.[30] (Peking Opp. Fee Br. at 13-14; O'Prey Opp. Aff. Ex. R: 7/6/06 Hearing Tr. at 19-23.) Peking maintains that "extensive discovery" and "wasteful" motion practice on these two designs warrants excluding "any and all attorneys' fees associated with the pursuit" of these designs.[31] (Peking Opp. Fee Br. at 13-14; see also O'Prey Opp. Aff. Ex. N: Doc. Req. ¶ 14; O'Prey

---

[29] At the July 7, 2006 hearing, J.S. Nicol denied that it had asserted a copyright infringement claim based on the Marilyn design, stating that its interest in the Marilyn design "was part of the res gestae of intent," but that "it is pretty minor. We will do without that." (O'Prey Opp. Aff. Ex. R: 7/6/06 Hearing Tr. at 66-67.)

[30] J.S. Nicol sought to introduce "correspondence between Peking and its customer" that would demonstrate a "willingness to violate both the contract and the law by quote interpreting a license and copyrighted design" that did not constitute copyright infringement "only because [such infringement was] aborted." (O'Prey Opp. Aff. Ex. R: 7/6/06 Hearing Tr. at 19-21.) Judge Daniels stated that he was "going to deny, allowing you to attempt to prove . . . that there was an intent to infringe with regard to Just Peachy designs so that the jury can, therefore, infer that that was the same intent that they had in this case." (O'Prey Opp. Aff. Ex. R: 7/6/06 Hearing Tr. at 23.)

[31] Peking asserts that "[a]t a minimum, time spent opposing Peking's motions in limine relating to these topics should be excluded. It appears that at least $10,103.50 was spent opposing Peking's motion in limine regarding [J.S. Nicol's] Just Peachy and Marilyn allegations." (Peking Opp. Fee Br. at 13 n.14.) Peking cites Phillips Nizer invoices (see generally O'Prey Opp. Aff. Ex. L), but does not provide any explanation for or analysis of its calculation that Phillips Nizer spent $10,103.50 on the "Just Peachy" and "Marilyn" designs in opposing Peking's motion in limine. Indeed, J.S. Nicol's analysis of those same invoices reveals that Phillips Nizer charged $7,768 total for time spent on the opposition motion, only a fraction of which was dedicated to issues concerning the "Just Peachy" or "Marilyn" claims. (See Fischman Reply Aff. ¶ 27 & Ex. 19: J.S. Nicol Omnibus Mot. In Limine Opp. Br.) The Court will not reduce J.S. Nicol's attorneys' fee claim where the "Marilyn" and "Just Peachy" (continued...)

Opp. Aff. Ex. O: 1/8/04 Scott Nicol Dep. at 261-64, 397-98; O'Prey Opp. Aff. Ex. P: 1/6/04 White Dep. at 425; O'Prey Opp. Aff. Ex. Q: 12/29/03 Sara Nicol Dep.)

_____J.S. Nicol argues that it is incorrect "for Peking to allege that J.S. Nicol was unsuccessful on copyright infringement claims for the 'Marilyn' J.S. Nicol design" because Peking admitted that they unintentionally infringed,[32] because any "dispute involving 'Marilyn' on the motion in limine was <u>evidentiary</u>, not substantive," and because the few questions posed at depositions regarding the Marilyn design focused on how the alleged Marilyn infringement changed the parties' relationship – as opposed to actual infringement – which does not constitute extensive discovery.  (Fischman Reply Aff. ¶¶ 23-24.)

J.S. Nicol also disputes Peking's characterization of the relevance and importance of its "Just Peachy" claim, which J.S. Nicol intended to use "to present evidence of [Peking's] blatantly improper conduct to the jury," and which it did not intend to pursue as a copyright infringement

---

[31] (...continued)
issues only were a small part of J.S. Nicol's opposition to Peking's motion in limine, and the fees for the entire motion in limine opposition brief were small.

[32] J.S. Nicol cites the following passage from Peking's Omnibus Motion In Limine as evidence of unintentional infringement:

> When Peking learned from [J.S. Nicol] that a designer at a factory in China inadvertently may have created a derivative work from the "Marilyn" design, Peking immediately investigated the complaint, determined that the factory had never manufactured or sold the item, assured [J.S. Nicol] that no product bearing the designs would be manufactured, and returned the designs to [J.S. Nicol].

(O'Prey Opp. Aff. Ex. J: Peking Omnibus Mot. In Limine Br. at 16-17; <u>accord</u>, Fischman Reply Aff. Ex. 5: Peking Pre-Trial Br. at 22.)

claim. (Fischman Reply Aff. ¶¶ 28-29 & Ex. 20.) J.S. Nicol acknowledges that Judge Daniels restricted its ability to use the "Just Peachy" evidence before trial, but maintains that evidence of Peking's interest in and use of the "Just Peachy" design could have been used to rebut witness testimony – which apparently never took place – that "Peking customers were not interested, and even dissatisfied with the J.S. Nicol designs." (Fischman Reply Aff. ¶ 29.) J.S. Nicol accuses Peking of "grossly overstat[ing] the significance of a minor discovery and evidentiary issue to pursue a frivolous reduction in time charges." (Fischman Reply Aff. ¶ 29.)

This Court agrees with Peking that J.S. Nicol should not be awarded attorneys' fees for all of its work relating to the "Just Peachy" and "Marilyn" designs, but also agrees with J.S. Nicol that its work relating to these designs was not entirely fruitless and did not consume an egregious amount of discovery time or motion practice. Accordingly, this Court will reduce J.S. Nicol's attorneys' fee request by $2,000.

### 3. Unsuccessful Unfair Competition & Tortious Interference Claims

Peking argues that J.S. Nicol should not recover any attorneys' fees relating to its unfair competition and tortious interference claims. (Dkt. No. 111: Summit Aff. Ex. B: Am. Compl. ¶¶ 35-36, 44-50.) J.S. Nicol asserted an unfair competition claim in all of its pre-trial orders (see O'Prey Opp. Aff. Ex. U-X: Joint Pre-Trial Orders), and engaged in some discovery relating to its tortious interference claim (see Dkt. No. 121: O'Prey Opp. Aff. Ex. O: Scott Nicol Dep. at 414-15; O'Prey Opp. Aff. Ex. Q: Sarah Nicol Dep. at 220-21.) J.S. Nicol "dropped" these two claims during

trial after Peking moved for judgment as a matter of law at the close of J.S. Nicol's case. (See Dkt. No. 120: Peking Opp. Fee Br. at 14; see also O'Prey Opp. Aff. Ex. Z: 12/8/06 Trial Tr. at 740.)

J.S. Nicol argues that it "did not lose on the tortious interference or unfair competition claims, but instead chose not to pursue them at trial" in order to "streamline the case and reduce trial days on claims that would likely [be] viewed by the jury as similar in nature to the core claims being litigated." (Dkt. No. 126: Fischman Reply Aff. ¶ 22.) Furthermore, J.S. Nicol argues that the unfair competition claim and the copyright claim "involved the same core of facts," and that J.S. Nicol had the right to bring both claims because Peking's post-breach distribution of J.S. Nicol's licensed designs "wrongly implied J.S. Nicol's authorization of such sales," and unfairly forced J.S. Nicol to compete against its own products being unlawfully sold by Peking. (Fischman Reply Aff. ¶¶ 21-22 & Ex. 2: 12/4/06 Trial Tr. at 265.)

This Court agrees with J.S. Nicol that its pursuit of these two claims involved a common core of facts with its breach of contract and copyright infringement claims, and believes that any work relating to these additional claims did not generate significant additional discovery or motion practice. No reduction in J.S. Nicol's requested attorneys' fees is warranted. See cases cited at pages 17-18 above.

### 4. J.S. Nicol's Unsuccessful Summary Judgment Motion

Peking argues that J.S. Nicol should not recover any attorneys' fees for its unsuccessful February 20, 2004 partial summary judgment motion "on Count Four of its Amended Complaint for copyright infringement." (Dkt. No. 120: Peking Opp. Fee Br. at 14-15; Dkt. No. 32:

J.S. Nicol 2/20/04 SJ Br. at 1.) Peking simultaneously cross-moved for partial summary judgment "on Peking's First, Second and Third Amended Counterclaims and Count IV of [J.S. Nicol's] Amended Complaint." (Dkt. No. 126: Fischman Reply Aff. Ex. 4: Peking 2/20/04 SJ Br. at 1.) On October 4, 2004, this Court denied both parties' cross-motions for summary judgment. J.S. Nicol, Inc. v. Peking Handicraft, Inc., 03 Civ. 1548, 2004 WL 2360025 (S.D.N.Y. Oct. 20, 2004) (Peck, M.J.). (See also Dkt. No. 47: 3/23/04 Order.)

Peking claims that this Court should reduce J.S. Nicol's attorneys' fees by "at least $24,636"[33] (Peking Opp. Fee Br. at 15) – the amount Peking claims J.S. Nicol spent on the unsuccessful summary judgment motion – because this Court had previously discouraged J.S. Nicol from filing the motion, stating that J.S. Nicol was "wasting [its] time" because the License Agreement was sufficiently ambiguous to "prevent summary judgment." (Dkt. No. 111: Summit Aff. Ex. O: 1/27/04 Hearing Tr. at 17-18.) J.S. Nicol, however, argues correctly that this Court referred to Peking's possible summary judgment motion as a waste of time (see Summit Aff. Ex. O: 1/27/04 Hearing Tr. at 17), and offered no direct opinion on J.S. Nicol's motion except to suggest that if Peking did not file a partial summary judgment motion, J.S. Nicol should not file a motion either. (See Summit Aff. Ex. O: 1/17/04 Hearing Tr. at 19; Dkt. No. 126: Fischman Reply Aff. ¶¶ 31-32.) In fact, this Court repeatedly emphasized that both parties' summary judgment motions – at least regarding the breach of contract issues – would fail, and actively encouraged both parties

---

[33]  Peking, however, does not separate time spent on J.S. Nicol's motion from time spent on J.S. Nicol's opposition to Peking's cross-motion for summary judgment. (See Peking Opp. Fee Br. at 15; Dkt. No. 121: O'Prey Opp. Aff. Ex. M: Nizer Time Sheets.)

to forego summary judgment motions. (See Summit Aff. Ex. O: 1/27/04 Hearing Tr. at 17-20.) Despite this admonition, both J.S. Nicol and Peking filed partial summary judgment motions, and this Court, as predicted, denied them. See J.S. Nicol, Inc. v. Peking Handicraft, Inc., 2004 WL 2360025.

Both parties deserve blame for unnecessary motion practice. Any time that J.S. Nicol spent on its summary judgment motion, however, overlapped with time spent on its opposition to Peking's summary judgment motion, as well as serving as preparation for trial. (See Fischman Reply Aff. ¶ 33.) Nevertheless, to further discourage wasteful summary judgment motions, the Court reduces J.S. Nicol's fee request by $6,000.

### 5. Unsuccessful Post-Trial Motions

Peking argues that J.S. Nicol should not be awarded any attorneys' fees associated with its post-trial Rule 50 motion[34] seeking judgment as a matter of law because the motion was "frivolous." (Dkt. No. 120: Peking Opp. Fee Br. at 21; Dkt. No. 121: O'Prey Opp. Aff. Ex. JJ: 1/26/07 Peking Letter.) J.S. Nicol describes Peking's argument as "self-serving" and contrary "to the very purpose of [License Agreement] Section 22, which is obviously to make the prevailing party

---

[34] J.S. Nicol's post-trial motion, which Judge Daniels denied, sought "(1) actual damages or profits instead of the statutory copyright damages that plaintiff sought at trial and was awarded by the jury; or, alternatively, (2) a finding of willful infringement by defendants and an increase of statutory copyright damages." (Dkt. No. 127: 4/21/08 Order at 2; see also Dkt. Nos. 112-13.) Peking also filed a post-trial motion, which Judge Daniels denied, renewing its trial motion for judgment as a matter of law on J.S. Nicol's copyright infringement claim. (See 4/21/08 Order at 2, 7-9; see also Dkt. Nos. 107-09.)

whole," and asks for $55,680 in post-trial fees and $5,417.89 in disbursements.[35/] (See Dkt. No. 126: Fischman Reply Aff. ¶¶ 46-48 & Exs. 1, 27.)

             This Court agrees that J.S. Nicol should not be awarded attorneys' fees and costs for work relating to its unsuccessful post-trial motion, but that J.S. Nicol should be awarded attorneys' fees (and costs) for time spent opposing Peking's Rule 50 motion.

J.S. Nicol also is entitled to legal fees for the preparation of its fee application. See Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183-84 (2d Cir. 1996) ("attorneys' fees for the preparation of the fee application are compensable") (citing Gagne v. Maher, 594 F.2d 336, 343-44 (2d Cir. 1979), aff'd, 488 U.S. 122, 100 S. Ct. 2570 (1980)); see also, e.g., Alexander v. Amchem Prods., Inc., 07 Civ. 6441, 2008 WL 1700157 at *8 n.11 (S.D.N.Y. Apr. 3, 2008); Reiter v. Metro. Transp. Auth., 01 Civ. 2762, 2007 WL 2775144 at *17 (S.D.N.Y. Sept. 25, 2007) ("It is settled that the time spent on a fee application is itself compensable."); Fink v. City of N.Y., 154 F. Supp. 2d 403, 413 (S.D.N.Y. 2001).

An analysis of Phillips Nizer's post-trial billing records reveals approximately $26,000 in attorneys' fees clearly related to work on its attorneys' fee application or on its opposition to Peking's Rule 50 motion (which therefore is compensable), approximately $10,000 in attorneys' fees clearly related to work on J.S. Nicol's own Rule 50 motion (and thus is not being awarded), and

---

[35/]    Peking also argues that "the amount of fees sought by [J.S. Nicol] from January 1, 2007 through March 18, 2007 is unreasonable." (Dkt. No. 130: Peking Sur-Reply Letter at 3.)

approximately $19,400 that is not clearly attributable to work on any specific motion.[36] (See Fischman Reply Aff. Ex. 27: Nizer Invoices.) J.S. Nicol therefore will receive approximately one-third of those attorneys' fees not clearly attributable to any specific motion, or $6,460, as well as $26,000 in attorneys' fees clearly related to it work on the fee application and its opposition to Peking's Rule 50 motion. In addition, J.S. Nicol shall receive one-third of its claimed $5,417.89 is post-trial costs and expenses, or $1,806.

Accordingly, this Court awards a total of $32,640 in post-trial attorneys' fees and $1,806 is post-trial costs and expenses, or, to put it another way, reduces J.S. Nicol's request by $23,048.50 in attorneys' fees and $3,611.89 in expenses.

### D. Excluded Expert & Witness

#### 1. Excluded Expert Report & Testimony

Peking argues that J.S. Nicol should not recover "any attorneys' fees sought in connection with [J.S. Nicol's] 'expert,' Mr. Tedd S. Levine," a licensing and royalty-based business expert who submitted an expert report[37] regarding interpretation of the License Agreement. (Dkt. No. 120: Peking Opp. Fee Br. at 15-16; Dkt. No. 121: O'Prey Opp. Aff. Ex. AA: 1/7/04 Levine

---

[36] For example, a January 11, 2007 entry reads "final work on motions." (Fischman Reply Aff. Ex. 27: Phillips Nizer Invoices at 1.) It is not clear whether this entry refers to final work on J.S. Nicol's Rule 50 motion, or final work on its fee application, both of which J.S. Nicol filed the following day.

[37] On April 17, 2006, Levine submitted a supplemental expert report that included estimates of J.S. Nicol's damages under varying interpretations of the License Agreement and estimates of Peking's post-termination sales. (Dkt. No. 111: Summit Aff. ¶ 22; Dkt. No. 126: Fischman Reply Aff. Ex. 7: Levine Supp. Expert Report.)

Expert Report; see also Dkt. No. 111: Summit Aff. ¶ 22.) On March 22, 2004, Peking filed a motion to exclude Levine's expert report and to prevent his testimony, claiming that Levine's analysis constituted inadmissible legal conclusions that offered no useful guidance to the jury. (Peking Opp. Fee Br. at 15; O'Prey Opp. Aff. Ex. K: 1/22/04 Peking Mot. to Exclude Levine Report.) On July 6, 2006, Judge Daniels excluded Levine's testimony, finding his testimony to be that of a "legal expert" trying to interpret the contract after the fact. (O'Prey Opp. Aff. Ex. R: 7/6/06 Hearing Tr. at 14-16.) Peking asks this Court to reduce J.S. Nicol's attorneys' fees by the full amount paid to Levine, either $27,474.20 or $38,301.20.[38/] (Peking Opp. Fee Br. at 16 n.19.)

J.S. Nicol argues that this Court should include any payments made to Levine in the attorneys' fee award because the License Agreement specifically provides for the reimbursement of "expert witness fees" (Summit Aff. ¶ 23 & Ex. A: License Agreement § 22; Fischman Reply Aff. ¶ 34), because Mr. Levine remained "available to testify on rebuttal," because this Court "considered the expert report in denying Peking's motion for summary judgment," because Levine's "work on calculating damages was a necessary part of J.S. Nicol's case" (Fischman Reply Aff. ¶ 34), and because Judge Daniel's July 6, 2006 decision to exclude Levine's testimony occurred "long after the

---

[38/]    J.S. Nicol claims it paid Levine $38,301.20 for work done between December 2003 and June 2006. (See Summit Aff. ¶¶ 10, 24 & Ex. J: Levine Invoices.) This figure includes Levine's hourly fees as well as disbursements, such as travel and mailing expenses, and copying or supply costs. (See Summit Aff. Ex. J: Levine Invoices.) J.S. Nicol later reduced this figure by $5,000, claiming $33,301.20 for the Levine invoices. (See Fischman Reply Aff. ¶ 35 n.17 & Ex. 23: Levine & Baldinger Invoices.) This Court will use the $33,201.20 figure for Mr. Levine's services.

expenses at issue were incurred, and could not have been anticipated when he was retained or performed his services" (Summit Aff. ¶ 23).

J.S. Nicol is correct that the License Agreement specifically provides for "expert witness fees," but this Court only may award such fees if it reasonable to do so. See, e.g., Ger-Nis Intern., LLC v. FJB, Inc., No. 07 CV 898, 2008 WL 2704384 at *13-15 (S.D.N.Y. July 3, 2008) (analyzing reasonableness of contractually-based attorneys' fees); Orix Fin. Servs., Inc. v. Enlow, 06 Civ. 13604, 2007 WL 3224536 at *5 (S.D.N.Y. Nov. 1, 2007) (holding that the "contractual provisions for attorneys' fees . . . are unreasonably high" and that "[f]ee awards are always subject to the Court's approval."); Theatre Confections, Inc. v. Sunstar Theatres Coral Springs, LLC, No. 03-CV-6006, 2003 WL 21730694 at *1 (W.D.N.Y. June 6, 2003) ("[I]t remains the Court's duty to determine a reasonable attorney's fee" created under a valid contract.); Daiwa Special Asset Corp. v. Desnick, 00 Civ. 3856, 2002 WL 31767817 at *1 (S.D.N.Y. Dec. 3, 2002) ("Where a contract provides for the payment of attorneys' fees to the prevailing party in the event of litigation, the court shall only award fees that are reasonable.") (citing F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1993)).

This Court finds that it would be unreasonable to award J.S. Nicol attorneys' fees for Levine's expert report, and for any trial preparation concerning the subject matter of that report, because J.S. Nicol was unsuccessful in getting Levine or his report before the jury.[39]   More

---

[39]    See, e.g., Anderson v. City of N.Y., 132 F. Supp. 2d 239, 244 S.D.N.Y. 2001) (excluding fees for expert whose testimony was "unsuccessful in proving any long-term emotional (continued...)

importantly, Levine's January 7, 2004 expert report so clearly consists of inadmissible legal conclusions that most attorneys would know never had a significant chance of surviving a preclusion motion. (See O'Prey Opp. Aff. Ex. AA: 1/7/04 Levine Expert Report; see also O'Prey Opp. Aff. Ex. K: 1/22/04 Peking Mot. to Exclude Levine Report.) In addition, this Court did not consider Levine's expert report in its summary judgment motion, as J.S. Nicol claims, and Levine's availability to testify on rebuttal and the fact that Judge Daniels ruled to exclude Levine's testimony long after Levine's expenses were incurred does not render such expenses reasonable.

This Court, therefore, will reduce J.S. Nicol's attorneys' fees by $33,201.20, to exclude Levine's expert witness fees and related expenses.

### 2. Excluded Non-Party Witness

Peking also argues that this Court should not include any "attorneys' fees and costs incurred by [J.S. Nicol] relating to its discovery from Ms. [Nancy] Lambert," a non-party witness whom J.S. Nicol deposed on January 22, 2004. (Dkt. No. 120: Peking Opp. Fee Br. at 16-17; Dkt. No. 121: O'Prey Opp. Aff. ¶ 39.) Peking moved "to exclude documents and testimony relating to Peking's relationship with . . . . Nancy Lambert" on grounds of jury confusion, relevance and hearsay. (Peking Opp. Fee Br. at 16; O'Prey Opp. Aff. Ex. J: Peking Omnibus Mot. In Limine Br. at 17-19.) J.S. Nicol opposed this motion, and on July 6, 2006, Judge Daniels ruled that "evidence about the

---

39/    (...continued)
damages, the sole issue on which there was expert testimony."); see also, e.g., Jung v. Neschis, 01 Civ. 6993, 2008 WL 2414310 at *2 (S.D.N.Y. June 13, 2008) ("Courts have wide latitude in determining what constitutes reasonable attorney's fees.").

timing of the agreement with Ms. Lambert . . . [was] admissible," but ruled that evidence regarding whether Lambert's interpretation of the disputed contract language mirrored J.S. Nicol's interpretation was inadmissible. (O'Prey Opp. Aff. Ex. R: 7/6/06 Hearing Tr. at 76-78; Dkt. No. 126: Fischman Reply Aff. ¶ 36.)

Neither Peking nor J.S. Nicol provides any evidence as to the importance or relevance of the portions of Lambert's deposition testimony that the Court excluded, and those portions that the Court ruled admissible; this Court therefore will order Peking to pay 50% of the costs associated with the Lambert deposition. J.S. Nicol's attorneys' fees and costs thus are reduced by $993.63.[40]

### E.    Specific Fees & Costs

#### 1.    Costs of Litigating in the SDNY

J.S. Nicol argues that Peking should not have to pay for "costs incurred by Sarah and Scott Nicol in attending court hearings and the trial in this case" because J.S. Nicol elected to file suit in the Southern District of New York.[41]    (Dkt. No. 120: Peking Opp. Fee Br. at 20.)

---

[40]    Peking claims attorneys' fees and costs relating to the Lambert deposition total $2191.50; J.S. Nicol claims they total $1783.00. (See Peking Opp. Fee Br. at 17 n.20; Fischman Reply Aff. ¶ 37; O'Prey Opp. Aff. Ex. CC: J.S. Nicol Invoices; see also Dkt. No. 130: Peking Sur-Reply Letter at 3.) This Court finds it impossible, on the record before it, to accurately determine the amount, and therefore has used the average of the parties' estimates, $1987.25, and divided that in half.

[41]    J.S. Nicol "is a corporation duly organized and existing under the laws of the State of Virginia with its principal place of business" in Fairfax, Virginia. (Dkt. No. 111: Summit Aff. Ex. B: Am. Compl. ¶ 3.) Peking "is a corporation organized and existing under the laws of the State of California with offices" in San Francisco, CA, "and a showroom" in New York City. (Summit Aff. Ex. B: Am. Compl. ¶ 4.) While the parties' License Agreement
(continued...)

Specifically, Peking objects to $8,220.14 in hotel charges (see Summit Aff. ¶ 10 & Ex. M: Hotel Invoices), and $479.70 in Federal Express charges for shipments made between New York City and Fairfax, Va. (see Summit Aff. ¶ 10 & Ex. L: Federal Express Invoices).

Under 28 U.S.C. § 1391(b)(1), venue is proper where defendant resides – here, Peking resides in the Northern District of California or the Southern District of New York. While venue might have been proper in Virginia as a district in which a substantial part of the events giving rise to the claim occurred, 28 U.S.C. § 1391(b)(2), a suit in J.S. Nicol's home forum might have been objected to by Peking and the fight over whether venue was proper could have delayed the case. J.S. Nicol certainly cannot be faulted for not choosing to sue in its home forum (which venue might have been questioned) and instead suing in the Southern District of New York where Peking has its showroom.

In addition, the License Agreement provides for recovery of "litigation expenses," which should include the reasonable cost of hotels to enable the Nicols to attend depositions, hearings and the trial. (Dkt. No. 126: Fischman Reply Aff. ¶ 51; Summit Aff. Ex. A: License Agreement § 22.) Peking, therefore, must pay J.S. Nicol's reasonable New York lodging costs. Peking is correct, however, and J.S. Nicol agrees, that Peking should not have to pay for $414.66 in spa, movie and hotel mini bar charges. (See Peking Opp. Fee Br. at 20; Fischman Reply Aff. ¶ 51.)

---

41/    (...continued)
contains a paragraph headed "Choice of Law and Venue," calling for Virginia law to apply, there is no provision in the Agreement as to where suit can (or cannot) be brought. (Summit Aff. Ex. A: License Agreement § 22, quoted on page 2 above.)

In addition, the Court will not require Peking to pay the approximately $528.00 in valet parking charges and will reduce the hotel charges by $1,140 to reflect a reasonable room rate of $275 per night.[42]

Finally, Peking shall pay J.S. Nicol's Federal Express charges, because they are reasonable and routine. See, e.g., Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 285-86 (E.D.N.Y. 2008) (Federal Express charges are "routinely recoverable."); Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 212 (E.D.N.Y. 2007) (reimbursing plaintiff for, among other costs, Federal Express charges); Staples, Inc. v. W.J.R. Assocs., No. 04-CV-904, 2007 WL 2572175 at *9 (E.D.N.Y. Sept. 4, 2007) (finding Federal Express charges to be "[r]easonable out-of-pocket expenses . . . generally reimbursed as a matter of right in connection with an award of attorneys' fees"); Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 304 (S.D.N.Y. 2001) (Federal Express charges are "'reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'").

Accordingly, Peking shall pay J.S. Nicol $479.70 in Federal Express charges and $6,137.48 in hotel charges. J.S. Nicol's request will be reduced by $2,082.66.

## 2. Courtroom Technology

Peking argues that J.S. Nicol "should not be reimbursed for the $27,293.90 it paid to Esquire Litigation Services . . . for technology support at trial because such assistance was not

---

[42] During the 2006 trial, J.S. Nicol paid a $389 per diem room rate for ten nights. (See Summit Aff. Ex. M: Hotel Invoices.)

necessary to the prosecution of this case." (Dkt. No. 120: Peking Opp. Fee Br. at 20-21; see Dkt. No. 111: Summit Aff. ¶¶ 10, 21 & Ex I: Esquire Invoices; Summit Aff. Ex. V: Esquire Contract; Summit Aff. Ex. W: Cooperberg Bio.)  Peking claims that "Esquire's services were used exclusively to project documents onto a screen," that this Court should not award any costs associated with Esquire's services and should deny J.S. Nicol $1584 in attorneys' fees for time spent consulting with Esquire.  (See Peking Opp. Fee Br. at 20-21 & Ex. A; Dkt. No. 121: O'Prey Opp. Aff. Ex. II: Phillips Nizer Invoices at 1.)

J.S. Nicol argues that Esquire's technical presentation of exhibits during trial was necessary, reasonable, cost effective and covered under the License Agreement as a "litigation expense."  (See Dkt. No. 126: Fischman Reply Aff. ¶¶ 38-43; Summit Aff. ¶ 21 & Ex. A: License Agreement § 22; Dkt. No. 125: J.S. Nicol Reply Fee Br. at 8-9.)  Esquire's Michael Cooperberg assisted J.S. Nicol during trial by displaying "critical" documents to the jury (see Fischman Reply Aff. ¶ 39), entering deposition testimony into the record, and electronically formatted transcripts and created demonstrative exhibits (see Fischman Reply Aff. ¶¶ 39-40 & Ex. 24-25).  J.S. Nicol argues that it used Esquire in place of its paralegal during trial, charged no time for its paralegal during trial, and that Peking "utilized the identical courtroom technology with one of its attorneys performing the task that Mr. Cooperberg performed for J.S. Nicol, at no doubt larger expense." (Fischman Reply Aff. ¶¶ 41, 43; Summit Aff. ¶ 21 & n.11.)

Lawyers often use litigation support specialists and receive reimbursement for such services when awarded attorneys' fees.  See, e.g., In re Visa Check/Mastermoney Antitrust Litig., 297

F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (Following the "common practice in this circuit" in awarding the cost of "litigation and trial support services."), aff'd, 396 F.3d 96 (2d Cir.), cert. denied, 544 U.S. 1044, 125 S. Ct. 2277 (2005); BD v. DeBuono, 177 F. Supp. 2d 201, 204 (S.D.N.Y. 2001) (reimbursing attorneys' for use of a "trial preparation consultant" who, among other tasks, "provided technological assistance"); see also, e.g., Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 429 (7th Cir 2000) ("[W]e believe that prevailing parties can, under appropriate circumstances, be reimbursed for the cost of computer generated, multi-media presentations even to the degree that such presentations are used not to produce exhibits but rather to display them to the court."). J.S. Nicol's use of Esquire's services appears reasonable, and while Peking may feel that Esquire provided little of value in a case that did not warrant technological and litigation support, the help Esquire provided is common in many civil trials in this district. Nonetheless, although J.S. Nicol claims that it relied on Cooperberg's[43] "extensive trial experience . . . . concerning strategy and tactics" (Fischman Reply Aff. ¶ 41 n.20), it seems to this Court that Cooperberg's presence at trial served the equivalent of an additional paralegal or litigation support staff member. As such, this Court will reduce Esquire's hourly rate of $195 to $245 per hour, and its flat trial rate of $1500 per day, by one-third in order to approximate the $150 per hour paralegal or litigation support rate that is commonly accepted in this District. See, e.g., Trs. of Mason Tenders Dist. Council Welfare Fund v. Stevenson Contracting Corp., 05 Civ. 5546, 2008 WL 3155122 at *11-12 (S.D.N.Y. June 19, 2008) (awarding legal fees

---

[43] Mr. Cooperberg is an attorney. (See Summit Aff. Ex. W: Cooperberg Bio.; Fischman Reply Aff. ¶ 41 n.20.)

for "litigation support staff" at rates of $140 to $150 per hour); <u>Hnot</u> v. <u>Willis Group Holdings Ltd.</u>, 01 Civ. 6558, 2008 WL 1166309 at *3 (S.D.N.Y. Apr. 2, 2008) ("[T]here is ample support for $150 per hour as a reasonable rate for paralegals in this District."); <u>Wise</u> v. <u>Kelly</u>, 05 Civ. 5442, 2008 WL 482399 at *9-11 (S.D.N.Y. Feb. 21, 2008) (awarding legal fees for paralegal work at rate of $100 per hour); <u>Heng Chan</u> v. <u>Sung Yue Tung Corp.</u>, 03 Civ. 6048, 2007 WL 1373118 at *5-6 (S.D.N.Y. May 8, 2007) (awarding $125 per hour for a "legal assistant" and $150 per hour for a "senior legal assistant"); <u>Sheehan</u> v. <u>Metro. Life Ins. Co.</u>, 450 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (awarding legal fees for paralegals at $150 per hour); <u>Access 4 All, Inc.</u> v. <u>Park Lane Hotel, Inc.</u>, 04 Civ. 7174, 2005 WL 3338555 at *5 (S.D.N.Y. Dec. 7, 2005) (awarding $115 per hour for paralegals); <u>Morris</u> v. <u>Eversley</u>, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (awarding $125 per hour for paralegals).

In addition, because J.S. Nicol could have hired a New York City based trial support firm, the Court will not require Peking to pay for Esquire's hotel costs of $3,050.15. <u>See</u> <u>Alonso</u> v. <u>Union Oil Co.</u>, 71 F.R.D. 523, 526 (S.D.N.Y. 1976) (deducting majority of foreign expert's traveling costs "because testimony . . . might just as easily have been obtained from a more local 'expert.'"); <u>see also</u> <u>Greenbaum</u> v. <u>Svenska Handelsbanken, N.Y.</u>, 998 F. Supp. 301, 305 (S.D.N.Y. 1998) (Eliminating hotel and travel expenses from attorneys' fee award for attorney "whose office is so distant from Manhattan, when equally experienced employment discrimination lawyers are available in New York City.").

Accordingly, Peking shall pay J.S. Nicol $16,160.88; J.S. Nicol's fee request is reduced by $8,082.87 in fees, and $3050.15 in hotel costs.

### 3. **Transcripts**

Peking asks this Court to reduce, by $1,083.95, the $11,439[44] in court reporting fees sought by J.S. Nicol to eliminate payment for "unnecessary expenses such as 'hand delivery,' and fees charged to receive a 'rough disk' in advance of the final transcript being available." (Dkt. No. 120: Peking Opp. Fee Br. at 21; see Dkt. No. 111: Summit Aff. ¶¶ 10, 25 & Ex H: Ct. Reporting Invoices.) Peking argues that J.S. Nicol "has provided no explanation why such 'rush' services were required." (Peking Opp. Fee Br. at 21.) J.S. Nicol denies that the invoices reflect any "rush delivery," and defends the request for the only "rough disk" it obtained because it needed to review the first day of deposition testimony from Peking's Rule 30(b)(6) witness, Mr. White, prior to the second day of his deposition.[45] (Fischman Reply Aff. ¶ 44.)

Deposition transcripts are recoverable as costs if parties reasonably expect to use them at trial, see Boisson v. Banian Ltd., No. CV 97-1266, 221 F.R.D. 378, 379-80 (E.D.N.Y. 2004) (Deposition transcript fees recoverable as costs under 28 U.S.C. § 1920 and S.D.N.Y.-E.D.N.Y.

---

[44] J.S. Nicol later reported an additional $1,587.06 in reporting service bills that arrived after its initial fee application, bringing the total fee request for reporting services to $13,026.06. (See Dkt. No. 126: Fischman Reply Aff. ¶ 45 & Exs. 1 & 26.) Peking objects to the portion of these additional fees attributable to "additional copies of the court reporting transcript in 'mini' form so that four pages of transcript fit on one page of the 'minuscript.'" (See Dkt. No. 130: Peking Sur-Reply Letter at 3.) This Court agrees, and will deduct the $794.31 in minuscript court reporting fees from J.S. Nicol's fee request. See Liberty Theaters Inc. v. Becker, No. 99-7585, 201 F.3d 431 (table), 1999 WL 1070076 at *2 (2d Cir. Nov. 18, 1999) (noting that some district court decisions have held minuscripts to be taxable costs under 28 U.S.C. § 1920, but finding no abuse of discretion in awarding such costs where both parties received minuscript transcripts from the court reporter).

[45] J.S. Nicol actually requested two "rough disks" during Mr. White's deposition testimony, costing $943.95. (See Summit Aff. Ex H: Ct. Reporting Invoices at 2, 5.)

Local Civil Rule 54.1 only if "necessarily obtained . . . . for use at trial."); <u>U.S. Media Corp.</u> v. <u>Edde Entm't, Inc.</u>, 94 Civ. 4849, 1999 WL 498216 at *9-10 (S.D.N.Y. July 14, 1999) (finding deposition transcript costs taxable if "at the time the deposition was taken, it was reasonably expected that the transcript would be used for trial preparation"), although a "rough disk"– a value-added, expedited transcript service – is rarely recoverable as a cost.  <u>See</u> <u>Graber</u> v. <u>United States</u>, 01 Civ. 1269, 2003 WL 22743085 at *2 (S.D.N.Y. Nov. 20, 2003) (reducing defendant's costs to exclude "the amount attributable to the expedited processing" of deposition transcripts).  J.S. Nicol's explanation that it "requested a rough disk of the first day to review it in advance of the second day testimony" (Fischman Reply Aff. ¶ 44) is insufficient to warrant an award for two days of rough disk cost.  <u>See</u> <u>Gavin-Mouklas</u> v. <u>Info. Builders, Inc.</u>, 97 Civ. 3085, 1999 WL 728636 at *7 (S.D.N.Y. Sept. 17, 1999) (awarding "the regular, non-expedited [deposition transcript] cost" because plaintiff failed to "provide sufficient explanation for the obtaining of [the] deposition expeditiously").  In addition, the Court declines to award J.S. Nicol the $140 "hand delivery" costs.  <u>See</u> <u>V-Formation, Inc.</u> v. <u>Benetton Group SpA</u>, 01 Civ.610, 2003 WL 21403326 at *2 (S.D.N.Y. June 17, 2003) (reviewing "cases from the Southern District of New York [which] show that courts have generally disallowed recovery of costs for delivery expenses").

Therefore, the transcript costs will be reduced by $1,878.26, reflecting the amount attributable to J.S. Nicol's payment for rough disks, hand delivery and the minuscripts.

### 4.     **Westlaw Charges**

Peking argues that it should not have to pay for J.S. Nicol's $27088.32[46/] in Westlaw

charges because "[w]hile there is conflicting authority regarding compensation of computer research

charges on motions for awards of attorneys' fees, some courts have held that such charges are

inappropriate."  (Dkt. No. 120: Peking Opp. Fee Br. at 22; Dkt. No. 30: Peking Sur-Reply Letter at

3.)  J.S. Nicol counters that its Westlaw charges were reasonable, necessary, cost effective and

supported by case law in this district.  (See Fischman Reply Aff. ¶¶ 49-50; Dkt. No. 125: J.S. Nicol

Reply Fee Br. at 10-11.)

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred

by attorneys and ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748,

762 (2d Cir 1998) (emphasis added) (citing U.S. Football League v. Nat'l Football League, 887 F.2d

408, 416 (2d Cir. 1989), cert. denied, 493 U.S. 1071, 110 S. Ct. 1116 (1990); see also, e.g., Bleecker

Charles Co. v. 350 Bleecker St. Apartment Corp., 212 F. Supp. 2d 226, 231 n.6 (S.D.N.Y. 2002)

("The Second Circuit has suggested, at least in dictum, that computer research costs are indeed

separately reimbursable in an attorneys' fee award.").  Law firms and attorneys, therefore, who treat

the cost of computerized research as overhead are not entitled to attorneys' fees for those costs, while

– as the Second Circuit has now made clear – those attorneys who pass these expenses on to clients

as separately chargeable disbursements should be reimbursed in an attorney's fees award.  See Arbor

---

[46/]     J.S. Nicol requests $23,707.50 in Westlaw charges for research conducted through
December 31, 2006 (see Dkt. No. 111: Summit Aff. ¶ 19 & Ex. G: Phillips Nizer Invoices),
and $3380.82 in Westlaw charges for research conducted from January 1, 2007 through
March 18, 2007 (see Dkt. No. 126: Fischman Reply Aff. ¶¶ 48-50 & Ex. 27.)  All post-trial
costs and expenses, including Westlaw charges, shall be reduced by two-thirds, for the
reasons discussed at Point II.C.5 above.

Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 97-98 (2d Cir. 2004) ("If [plaintiff's counsel] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award."); see, e.g., Cheesecake Factory Assets Co. LLC v. Phila. Cheese Steak Factory Inc., No. 05-CV-3243, 2008 WL 2510601 at *6 (E.D.N.Y. June 20, 2008); Wise v. Kelly, 05 Civ. 5442, 2008 WL 482399 at *17 (Feb. 21, 2008) ("[M]ore recent cases, including controlling authority from the Second Circuit, authorize reimbursement for on-line legal research services," citing Arbor Hill).[47]

Phillips Nizer treated Westlaw charges as a disbursement billed separately from its attorneys' hourly rates and separately from its general overhead (see Fischman Reply Aff. Ex. 30: Retainer Agreement at Ex. B), and therefore deserves to be compensated by Peking for the cost of its electronic research. Peking's argument that some courts have found such charges to be inappropriate relies on outdated court decisions and ignores recent controlling authority from the Second Circuit. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d at 97-98.

_____ Accordingly, Peking shall pay J.S. Nicol's $27,088.32 in Westlaw charges, without any reduction.[48]

_____

[47]     See also, e.g., Banco Central Del Paraguay v. Paraguay Humanitarian Found., Inc., 01 Civ. 9649, 2007 WL 747814 at *3 (S.D.N.Y. Mar. 12, 2007); Aiello v. Town of Brookhaven, No. 94-CV-2622, 2005 WL 1397202 at *8 (E.D.N.Y. June 13, 2005); Davis v. N.Y. City Hous. Auth., 90 Civ. 628, 2002 WL 31748586 at *13 (S.D.N.Y. Dec. 6, 2002); Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 95 Civ. 8833, 2002 WL 1733681 at *14-15 (S.D.N.Y. July 26, 2002); Bleecker Charles Co. v. 350 Bleecker St. Apartment Corp., 212 F. Supp. 2d at 231 n.6.

[48]     This award does not include post-trial Westlaw charges which are included in the  post-trial
(continued...)

## <u>CONCLUSION</u>

The Court grants J.S. Nicol's attorneys' fees, costs and expenses as follows:

**<u>Attorneys' Fees</u>:**

| | |
|---|---|
| Fee request through 12/31/06: | $ 527,353.50 |
| Fee request from 1/1/07 – 3/18/07: | $   55,688.50 |
| **<u>Total Fee Request</u>:** | **$ 583,042.00** |

**<u>Attorneys' Fees Reductions</u>:**

| | |
|---|---|
| "Just Peachy" & "Marilyn" claims (<u>see</u> II.C.2 above): | -$   2,000.00 |
| Unsuccessful summary judgment motion (<u>see</u> II.C.4 above): | -$   6,000.00 |
| Post-trial work reduction (<u>see</u> II.C.5 above): | -$ 23,048.50 |
| Excluded nonparty witness/Lambert (<u>see</u> II.D.2 above): | -$      993.63 |
| **<u>Total Attorneys' Fees Reduction</u>**: | **-$  32,042.13** |

| | |
|---|---|
| **<u>Total Attorneys' Fees Award</u>:** | **$ 550,999.87** |

| | |
|---|---|
| **<u>Costs & Expenses Request</u>**: | **$ 149,143.49** |

**<u>Costs & Expenses Reductions</u>:**

| | |
|---|---|
| Post-trial work (<u>see</u> II.C.5 above): | -$   3,611.89 |
| Expert Tedd Levine (<u>see</u> II.D.1.above): | -$ 33,201.20 |
| Hotel Charges (<u>see</u> II.E.1 above): | -$   2,082.66 |
| Esquire Litigation Service (<u>see</u> II.E.2 above): | -$ 11,333.02 |
| Court Reporting/Transcript (<u>see</u> II.E.3 above): | -$   1,878.26 |
| **<u>Total Costs & Expenses Reduction</u>**: | **-$  52,107.03** |

| | |
|---|---|
| **<u>Total Costs & Espenses Award</u>:** | **$  97,036.46** |

| | |
|---|---|
| **<u>TOTAL AWARD</u>:** | **$ 648,036.33** |

---

[48]/    (...continued)
costs and expenses award discussed above.

For the reasons stated above, the Court grants J.S. Nicol's attorneys' fees, costs and expenses in the amounts of (1) $550,999.87 for attorneys' fees and (2) $97,036.46 for costs and expenses, for a total of $648,036.33.

DATED:     New York, New York
             October 17, 2008

**Andrew J. Peck**
United States Magistrate Judge

Copies to:    Michael S. Fischman, Esq.
             Patricia C. O'Prey, Esq.
             Judge George B. Daniels